UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CAITLIN DULANY, LARISSA GOMES, and MELISSA THOMPSON, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

MIRAMAX FILM NY, LLC, THE WALT DISNEY COMPANY, DISNEY ENTERPRISES, INC., HARVEY WEINSTEIN, ROBERT WEINSTEIN, DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, PAUL TUDOR JONES, JEFF SACKMAN, JAMES L. DOLAN, MIRAMAX DOES 1-10, and JOHN DOES 1-50, inclusive,

Defendants.

No. 1:18-cv-04857 (AKH)

ORAL ARGUMENT REQUESTED

---

**MEMORANDUM OF LAW IN SUPPORT OF
THE WALT DISNEY COMPANY AND DISNEY ENTERPRISES, INC.'S
MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ........................................................................................................................2

      A.     Weinstein Was Employed by Miramax, Not Disney. ...............................................2

      B.     There Is No Connection Between Disney and Weinstein's Conduct. ....................3

ARGUMENT ..............................................................................................................................4

I.     THE ONLY CLAIM AGAINST DISNEY -- FOR NEGLIGENT SUPERVISION
      AND RETENTION FROM 1993 TO 2005 -- IS TIME-BARRED. ..................................4

      A.     The Three-Year Statute of Limitations for Plaintiffs' Negligent
             Supervision and Retention Claim Has Run. ...........................................................4

      B.     Plaintiffs' Tolling Arguments Do Not Apply To Disney. .....................................5

             1.     The Continuing Violations Doctrine Does Not Toll the Statute of
                   Limitations. ................................................................................................5

             2.     Equitable Estoppel Does Not Apply Because Plaintiffs Do Not
                   Allege Any Improper Conduct by Disney. .................................................6

             3.     Duress Does Not Apply Because Plaintiffs Do Not Allege that
                   Disney Made Any Threat. ............................................................................7

II.    PLAINTIFFS FAIL TO ALLEGE THE ELEMENTS OF A NEGLIGENT
      SUPERVISION AND RETENTION CLAIM AGAINST DISNEY. ...............................7

      A.     Plaintiffs Do Not and Cannot Allege Any Facts that Plausibly Suggest
             Disney Employed Weinstein. .................................................................................9

      B.     Plaintiffs Do Not and Cannot Allege Any Facts that Support an Inference
             that Disney Knew or Should Have Known of Inappropriate Conduct. .................10

      C.     Plaintiffs Do Not and Cannot Allege that Any of the Conduct at Issue
             Took Place on or with Disney's Property. .............................................................11

CONCLUSION ........................................................................................................................12

APPENDIX ..............................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Dixon*, 480 F.3d 636 (2d Cir. 2007) ................................................................7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................8

*Bouchard v. N.Y. Archdiocese*, 719 F. Supp. 2d 255 (S.D.N.Y. 2010) ...................................10, 11

*Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335 (S.D.N.Y. 2013) .............................................................................8

*Cort v. Marshall's Dep't Store*, No. 14-cv-7385(NGG)(RER), 2015 WL 9582426 (E.D.N.Y. Dec. 29, 2015) ...............................................................8

*D'Amico v. Christie*, 518 N.E.2d 896 (N.Y. 1987)..........................................................11

*Doe v. Alsaud*, 12 F. Supp. 3d 674 (S.D.N.Y. 2014).........................................10, 11, 12

*Doe v. Guthrie Clinic, Ltd.*, 519 F. App'x 719 (2d Cir. 2013) ........................................8

*Doe v. Holy See (State of Vatican City)*, 17 A.D.3d 793 (N.Y. App. Div. 2005)...........................5

*Ehrens v. Lutheran Church*, 385 F.3d 232 (2d Cir. 2004)..............................8, 9, 10, 11

*Feliberty v. Damon*, 527 N.E.2d 261 (N.Y. 1988)..........................................................9

*Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160 (2d Cir. 1989) ...................................4

*Gonzalez v. J.P. Morgan Chase Bank, N.A.*, 228 F. Supp. 3d 277 (S.D.N.Y. 2017) ....................6

*In re Dig. Music Antitrust Litig.*, 812 F. Supp. 2d 390 (S.D.N.Y. 2011).........................8

*In re Integrated Res. Real Estate Ltd. P'ships Sec. Litig.*, 850 F. Supp. 1105 (S.D.N.Y. 1993).............................................................................7

*Manchester Equip. Co. v. Am. Way & Moving Co.*, 60 F. Supp. 2d 3 (E.D.N.Y. 1999) ..............................................................................8

*NECA-IBEW Pension Tr. Fund v. Lewis*, 607 F. App'x 79 (2d Cir. 2015) ...................................4

*Newman v. Lefkowitz*, 301 N.Y.S.2d 738 (1st Div. 1969) ...............................................9

*Orix Fin. Servs., Inc. v. Cline*, 369 F. App'x 174 (2d Cir. 2010) ...................................6

*Overall v. Estate of Klotz*, 52 F.3d 398 (2d Cir. 1995) ...............................................5, 7

*P.F. v. Delta Air Lines, Inc.*, No. 99-cv-4127, 2000 WL 1034623 (E.D.N.Y. June 20, 2000) ..................................................................................................................12

*Pichardo v. N.Y.C. Dep't of Educ.*, 953 N.Y.S.2d 31 (N.Y. App. Div. 2012)..............................5

*Riddle v. Citigroup*, 449 F. App'x 66 (2d Cir. 2011).....................................................................6

*Sahu v. Union Carbide Corp.*, No. 04-cv-8825 JFK, 2012 WL 2422757 (S.D.N.Y. June 26, 2012)......................................................................................................................9

*Schmidt v. Bishop*, 779 F. Supp. 321 (S.D.N.Y. 1991)..................................................................7

*Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429 (S.D.N.Y. 2014), *aff'd*, 579 F. App'x 7 (2d Cir. 2014)....................................................................................................5, 6

*United States v. Bestfoods*, 524 U.S. 51 (1998) ...........................................................................8

*Wechsler v. HSBC Bank USA, N.A.*, No. 15-cv-5907 (JMF), 2016 WL 1688012 (S.D.N.Y. Apr. 26, 2016), *aff'd*, 674 F. App'x 73 (2d Cir. 2017) ............................................4

**Statutes & Rules**

Fed. R. Civ. P. 12(b)(6)..................................................................................................................4

N.Y. C.P.L.R. § 214(5) ..................................................................................................................5

## PRELIMINARY STATEMENT

The Walt Disney Company and Disney Enterprises, Inc. (together, "Disney")
move to dismiss the single claim against them (Count III) on grounds that are unique from all
other defendants.  Specifically, while Plaintiffs make certain factual allegations against the other
defendants in an attempt to toll the statute of limitations, they do not make any such allegations
as to Disney.  Similarly, Plaintiffs do not plead any facts *about Disney* that even potentially
could satisfy the elements of a negligent supervision and retention claim *as to Disney*.  Plaintiffs'
claim against Disney thus fails as a matter of law.

*First*, Plaintiffs' claim is untimely.  Claims for negligent supervision and retention
have a three-year statute of limitations.  But the complaint pleads no facts about any conduct by
Disney after 2005, when Disney's then-subsidiary, Miramax Film Corp. ("Miramax"), no longer
employed Harvey Weinstein.  As to the other defendants, Plaintiffs try to avoid the statute of
limitations with equitable estoppel or duress tolling allegations.  Plaintiffs make no such
allegations about Disney.  Disney is not alleged to have made any misrepresentation, issued any
threat, or taken any action that could have deterred Plaintiffs from bringing suit.  Indeed,
Plaintiffs' core tolling allegation -- that they were prevented from suing until 2018 because of a
widespread RICO conspiracy -- expressly does not apply to Disney.  (First Am. Compl. ("FAC")
¶ 5 n.2 (ECF 11).)  Plaintiffs' claim against Disney thus is time-barred.  (*Infra* Part I.)

*Second*, Plaintiffs do not plead facts that could support a claim for negligent
supervision and retention against Disney.  Notably absent are alleged facts that Disney employed
Weinstein, that Disney knew or should have known about Weinstein's alleged misconduct, or
that Weinstein's alleged misconduct involved Disney's premises or property.  Allegations about
Disney's former subsidiary, Miramax, are irrelevant to the claims against Disney because
Miramax and Disney are separate corporate entities.  (*Infra* Part II.)

1

## BACKGROUND

### A.     Weinstein Was Employed by Miramax, Not Disney.

The complaint states that, in 1993, Disney acquired Miramax, which operated as a Disney subsidiary.  (FAC ¶¶ 14, 32.)  From 1993 until 2005, Plaintiffs allege that "Miramax employed Weinstein and Weinstein was an executive and/or director of Miramax."  (FAC ¶ 259; *see also* FAC ¶ 14.)  Plaintiffs further allege that "Weinstein's conduct was committed within the scope of his employment at Miramax" and involved Weinstein's "use of Miramax employees" and "acts on Miramax property or at locations paid for by Miramax."  (FAC ¶ 275; *see also* FAC ¶ 228(e).)  Plaintiffs allege that Weinstein left Miramax in 2005 and formed The Weinstein Company, which has no corporate connection to Disney.  (FAC ¶¶ 34, 266.)

Plaintiffs allege no facts that plausibly suggest Disney employed Weinstein. Plaintiffs do allege that Disney "is defined as a 'co-obligor' of Miramax" in employment agreements between Weinstein and Miramax, (FAC ¶¶ 16, 17, 260), but Plaintiffs do not plead any facts regarding any purported obligations that Disney had as a co-obligor, let alone that they somehow transformed Disney into Weinstein's employer.[1]

Plaintiffs also make no allegations that attempt to "pierce the corporate veil" between Disney and Miramax.  Nor could they.  To the contrary, Plaintiffs highlight Miramax's autonomy as a subsidiary of Disney, alleging that Weinstein and his brother only agreed to Disney's acquisition of Miramax because it "ensure[d] that they would remain at the head of

---

[1] In a footnote explaining that Disney is *not* alleged to have participated in the alleged RICO enterprise, Plaintiffs say that "Disney and Disney Enterprises are named as employers of Weinstein for purposes of liability for negligent retention and supervision only at this juncture."  (FAC ¶ 5 n.2.)  That Plaintiffs chose to name Disney as Weinstein's employer for purposes of liability is not sufficient to meet their burden to plead sufficient factual matter to plausibly suggest that Weinstein was, in fact, employed by Disney, as their claim for negligent supervision and retention requires.

their company," (FAC ¶ 32), where Weinstein "[w]ield[ed] unfettered power in the movie and television industry."  (FAC ¶ 36.)

    **B.**    **There Is No Connection Between Disney and Weinstein's Conduct.**

    Disney -- the only defendant in this case not also named in the related *Geiss* action -- is hardly mentioned in Plaintiffs' First Amended Complaint.  (*See* Appendix (reproducing all allegations against Disney).)[2]

    For example, Plaintiffs assert that Disney "knew or should have known of Weinstein's conduct," (FAC ¶ 164), but the complaint contains no factual allegations about what Disney knew or how Disney knew it.  As to the other defendants, Plaintiffs allege that they arranged or participated in meetings with potential victims or made statements indicating awareness of alleged behavior.  (*See, e.g.*, FAC ¶¶ 147-68.)  But as to Disney, there are no such allegations.

    Similarly, Plaintiffs say nothing about Weinstein using Disney's property for his alleged misconduct.  The complaint alleges that Weinstein assaulted Plaintiffs in hotel rooms, but not that the hotels were Disney's property or under Disney's control.  (FAC ¶¶ 56, 73.)

    Plaintiffs also do not allege that Disney did anything to prevent Plaintiffs from bringing timely claims.  The complaint alleges that Plaintiffs did not bring suit until 2018 because of intimidation by Weinstein and RICO conspiracy members.  (FAC ¶¶ 205-21.)

---

[2] In *Geiss v. The Weinstein Co. Holdings, LLC*, No. 17-cv-9554-AKH (S.D.N.Y.), plaintiffs sued The Weinstein Company Holdings, LLC ("TWC"), Miramax, LLC, Miramax Film Corp., Miramax Film NY LLC, Harvey Weinstein, Robert Weinstein and TWC directors.  The *Geiss* plaintiffs claim that the defendants are liable for racketeering activity, a civil RICO conspiracy, negligent supervision and retention, civil battery, assault, intentional infliction of emotional distress, negligent infliction of emotional distress and ratification.  On June 4, 2018, Plaintiffs (represented by the same counsel as in *Geiss*) filed this action.  The complaint and claims in this case largely are copied from *Geiss*.

But Plaintiffs do not allege that Disney was part of any RICO conspiracy or responsible for any intimidation; rather, they expressly exclude Disney from the RICO allegations.  (FAC ¶ 5 n. 2.)

## ARGUMENT

**I.      THE ONLY CLAIM AGAINST DISNEY -- FOR NEGLIGENT SUPERVISION AND RETENTION FROM 1993 TO 2005 -- IS TIME-BARRED.**

Plaintiffs' negligent supervision and retention claim concerns conduct that took place at least 13 years ago, well beyond the three-year statute of limitations.  As explained by other defendants, this makes Plaintiffs' claims against all defendants untimely.[3]  As to Disney, however, none of Plaintiffs' arguments for avoiding that statute of limitations even arguably applies.  The complaint pleads no facts about any conduct by Disney after 2005.  And no conduct by any other defendants after 2005 can be attributed to Disney.

**A.      The Three-Year Statute of Limitations for Plaintiffs' Negligent Supervision and Retention Claim Has Run.**

"It is well established . . . that a statute of limitations defense may be decided on a Rule 12(b)(6) motion" to dismiss.  *Wechsler v. HSBC Bank USA, N.A.*, No. 15-cv-5907 (JMF), 2016 WL 1688012, at *2 (S.D.N.Y. Apr. 26, 2016), *aff'd*, 674 F. App'x 73 (2d Cir. 2017).  In fact, courts routinely dismiss untimely claims at the pleading stage "[w]here the dates in a complaint show that an action is barred by a statute of limitations."  *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989); *see*, *e.g.*, *NECA-IBEW Pension Tr. Fund v. Lewis*, 607 F. App'x 79, 81 (2d Cir. 2015) (affirming dismissal where claims were time-barred based on the

---

[3] To avoid repetitive briefing, Disney incorporates by reference the arguments for dismissal made by defendants in the related *Geiss* action and in this case.  In particular, Disney incorporates by reference the arguments made by the *Geiss* defendants in their motion to dismiss opening and reply memoranda of law.  (*See Geiss* ECF 48, 54, 56, 58, 67, 71, 87, 90, 102, 112, 113 & 115.)  Disney, which is not a defendant in *Geiss*, writes separately because there are two separate and compelling reasons that the claim against Disney is untimely and insufficient on its face.

complaint); *Doe v. Holy See (State of Vatican City)*, 17 A.D.3d 793 (N.Y. App. Div. 2005) (same for negligent supervision and retention claim).

Under New York law, Plaintiffs' negligent supervision and retention claim against Disney is subject to a three-year statute of limitations. N.Y. C.P.L.R. § 214(5). The three-year period begins to run on the "date of the last alleged underlying act" -- here, at latest, when Weinstein left Miramax in 2005. *Pichardo v. N.Y.C. Dep't of Educ.*, 953 N.Y.S.2d 31, 32 (N.Y. App. Div. 2012). Thus, even for the latest possible conduct in any way relevant to Disney, the statute of limitations expired in 2008, a decade before Plaintiffs brought this suit.

**B.     Plaintiffs' Tolling Arguments Do Not Apply To Disney.**

When claims appear untimely on the face of a complaint, a "plaintiff must make sufficient factual allegations that each of the requirements of [a tolling doctrine] is satisfied, or at least raise an issue of fact as to whether [a tolling doctrine] applies." *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 443 (S.D.N.Y. 2014), *aff'd*, 579 F. App'x 7 (2d Cir. 2014) (dismissing negligent supervision and retention claim as time-barred). Plaintiffs face a high bar: New York law "construes tolling doctrines as narrowly as possible." *Overall v. Estate of Klotz*, 52 F.3d 398, 404 (2d Cir. 1995).

The complaint raises three purported bases for tolling: the continuing violations doctrine, equitable estoppel and duress. None can apply to Disney.

**1.     The Continuing Violations Doctrine Does Not Toll the Statute of Limitations.**

As in *Geiss*, the complaint includes an allegation about "continuing violations" as a basis for tolling. (FAC at 59.) The *Geiss* plaintiffs have acknowledged, however, that the continuing violations doctrine does not apply. (*See* Pls.' Opp'n to Mot. to Dismiss at 49 n.206, *Geiss* (ECF 108) ("Plaintiffs concede that the continuing violations doctrine does not apply to

toll the statutes of limitations for Plaintiffs' claims.").)  So, too, it does not apply here.  Plaintiffs

say nothing specific to Disney about a continuing violation and provide no legal or factual

support for any tolling on that basis.

> ## 2.      Equitable Estoppel Does Not Apply Because Plaintiffs Do Not Allege Any Improper Conduct by Disney.

Equitable estoppel can preclude a defendant from invoking a statute of limitations

defense if *that defendant* committed "fraud, misrepresentations, or deception" that prevented the

plaintiff from filing a timely suit.  *Twersky*, 993 F. Supp. 2d at 442; *see also Riddle v. Citigroup*,

449 F. App'x 66, 69 (2d Cir. 2011) ("Equitable estoppel arises if . . . the defendant made a

definite misrepresentation of fact . . . ." (citation omitted)).

Plaintiffs do not plead that Disney did anything to defraud or deceive them, let

alone that Disney took affirmative steps to prevent them from bringing suit.  In the absence of

"plausible allegations that any acts by [Disney] prevented the plaintiff from accessing the courts

to vindicate [their] rights," equitable estoppel does not apply.  *Gonzalez v. J.P. Morgan Chase

Bank, N.A.*, 228 F. Supp. 3d 277, 292 (S.D.N.Y. 2017).

Nor can Plaintiffs invoke equitable estoppel against Disney based on "efforts to

suppress victims' claims" by purported RICO conspiracy members.  (*Geiss* Pls.' Opp'n to Mot.

to Dismiss at 50-53.)  Disney is specifically *excluded* from the alleged RICO conspiracy.  (FAC

¶ 5 n.2).  And "equitable estoppel cannot be applied [to Disney] based on extrapolation from

evidence pertaining to other defendants."  *Orix Fin. Servs., Inc. v. Cline*, 369 F. App'x 174, 177

(2d Cir. 2010).

The complaint mentions only equitable estoppel, but if Plaintiffs (like in *Geiss*)

also were to assert federal common law "equitable tolling" based on "fraudulent concealment,"

their argument would fail.  The statute of limitations for the state law claims against Disney must

be analyzed based on state law tolling principles; in New York, there is no separate "fraudulent concealment" doctrine.  *See Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007).  Regardless, Plaintiffs also do not plead that Disney engaged in any "fraudulent concealment," or was part of a RICO conspiracy that did.  *See, e.g.*, *In re Integrated Res. Real Estate Ltd. P'ships Sec. Litig.*, 850 F. Supp. 1105, 1120 (S.D.N.Y. 1993) ("The plaintiff must show an affirmative act on the part of the defendant to conceal the harm from the plaintiff in order to toll the statute of limitations . . . .").

### 3. Duress Does Not Apply Because Plaintiffs Do Not Allege that Disney Made Any Threat.

Plaintiffs also cannot invoke duress tolling to extend the statute of limitations. "[D]uress tolling is available only when duress is an element of the cause of action alleged." *Overall*, 52 F.3d at 404.  Here, the negligent supervision and retention claim against Disney does not involve duress.  *See Schmidt v. Bishop*, 779 F. Supp. 321, 330-31 (S.D.N.Y. 1991) (rejecting duress tolling for negligence claims arising out of alleged sexual abuse because duress was not an element).  In any event, duress requires that the plaintiff was prevented from bringing suit because of "threats or force *by the defendant*," but Plaintiffs plead no facts suggesting that Disney caused them duress.  *Overall*, 52 F.3d at 404 (emphasis added).  As such, even if Plaintiffs were to argue, as the plaintiffs do in *Geiss*, that Weinstein caused duress that prevented them from bringing timely claims, duress tolling could not apply as to Disney.

## II. PLAINTIFFS FAIL TO ALLEGE THE ELEMENTS OF A NEGLIGENT SUPERVISION AND RETENTION CLAIM AGAINST DISNEY.

Plaintiffs fail to plead specific facts against Disney that could satisfy the elements of negligent supervision and retention.  "To state a claim for negligent supervision or retention under New York law, in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the

employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (citation omitted).

   At the pleading stage, plaintiffs must allege specific facts that -- if true -- create a reasonable inference that the plaintiff is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  If a complaint contains only conclusory allegations for any required element, the claim must be dismissed. *See Cort v. Marshall's Dep't Store*, No. 14-cv-7385(NGG)(RER), 2015 WL 9582426, at *5 (E.D.N.Y. Dec. 29, 2015); *see also Doe v. Guthrie Clinic, Ltd.*, 519 F. App'x 719, 721 (2d Cir. 2013) (dismissing a negligent supervision claim that "fail[ed] to allege any fact . . . other than the mere happening of the incident complained of" (citation omitted)).

   Here, the negligent supervision and retention claim against Disney must rise or fall based on the allegations against Disney alone.  This is because New York law respects corporate separateness.  "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation omitted).  The only exception to this principle requires "piercing the corporate veil," but even for purposes of pleading at the motion to dismiss stage, that standard is "very demanding." *Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335, 347 (S.D.N.Y. 2013) (collecting cases).  "New York courts are 'reluctant' to disregard corporate form and will do so only if the form has been used to achieve fraud or the parent exercises such extreme dominion and control over the subsidiary as to render the corporate form a sham." *Manchester Equip. Co. v. Am. Way & Moving Co.*, 60 F. Supp. 2d 3, 6 (E.D.N.Y. 1999); *see also In re Dig. Music Antitrust Litig.*,

812 F. Supp. 2d 390, 418 (S.D.N.Y. 2011) (dismissing claims because piercing the corporate veil cannot be "merely based on a parent's ownership of a controlling interest in the subsidiary").

Plaintiffs make no attempt to pierce the corporate veil between Disney and Miramax.  And they do not plead even the most basic facts necessary to state a claim *against Disney*:  there are no facts alleged that *Disney* employed Weinstein, that *Disney* knew or had reason to know of Weinstein's alleged misconduct, or that the misconduct took place on *Disney's* property.

### A.  Plaintiffs Do Not and Cannot Allege Any Facts that Plausibly Suggest Disney Employed Weinstein.

Only an employer can be liable for negligent supervision or retention of its employee.  *See Ehrens*, 385 F.3d at 235.  Disney never employed Weinstein.  Rather, Weinstein indisputably was employed by Miramax and, later, TWC.  (FAC ¶ 259 ("At all times material prior to September 30, 2005, Miramax employed Weinstein and Weinstein was an executive and/or director of Miramax.").)  Miramax is a separate company from Disney; and the mere fact that Miramax was Disney's subsidiary is irrelevant to the existence of an employment relationship.  *See Sahu v. Union Carbide Corp.*, No. 04-cv-8825 JFK, 2012 WL 2422757, at *12-13 (S.D.N.Y. June 26, 2012).

Instead of alleging facts sufficient to plead that Disney employed Weinstein -- which they cannot do -- Plaintiffs state that Disney was defined as a "co-obligor" in employment contracts between Weinstein and Miramax.  (FAC ¶¶ 16, 17, 260.)  But employer status depends on "control [of] the manner in which work is performed."  *Feliberty v. Damon*, 527 N.E.2d 261, 263-64 (N.Y. 1988).  Disney being defined as a co-obligor says nothing about whether it *controlled* the manner in which Weinstein worked.  *See Newman v. Lefkowitz*, 301 N.Y.S.2d 738, 741 (1st Div. 1969) (making clear that co-obligors simply are parties who "voluntarily

assume a common burden").  Indeed, Plaintiffs do not plead any obligations that Disney had as a "co-obligor," nor do they allege that any such obligations somehow transformed Disney into Weinstein's employer.  Instead, Plaintiffs emphasize that it was important to Weinstein that he be employed by Miramax, not Disney, and that he and his brother only agreed to Disney's acquisition of Miramax because it "ensure[d] that they would remain at the head of their company," (FAC ¶ 32), where Weinstein "[w]ield[ed] unfettered power in the movie and television industry."  (FAC ¶ 36.)  Plaintiffs cannot plead an employer-employee relationship between Disney and Weinstein and, thus, their claim for negligent supervision and retention fails.

**B.     Plaintiffs Do Not and Cannot Allege Any Facts that Support an Inference that Disney Knew or Should Have Known of Inappropriate Conduct.**

The second required element of negligent supervision and retention requires that Plaintiffs establish that Disney "at any time prior to the relevant incident, knew or should have known of [Weinstein's] propensity to . . . engage in inappropriate sexual conduct."  *Ehrens*, 385 F.3d at 235.  "A claim for negligent supervision or retention arises when an employer places an employee in a position to cause foreseeable harm."  *Bouchard v. N.Y. Archdiocese*, 719 F. Supp. 2d 255, 261 (S.D.N.Y. 2010) (citation omitted).  "New York courts have held in employee sexual misconduct cases that an employer is only liable for negligent supervision or retention if it is aware of specific prior acts or allegations against the employee."  *Doe v. Alsaud*, 12 F. Supp. 3d 674, 680 (S.D.N.Y. 2014).

Plaintiffs' conclusory assertion that "Disney . . . knew or should have known of Weinstein's conduct" is wholly inadequate.  (FAC ¶ 164.)  Claims for negligent supervision and retention must be supported by "specific allegations" of facts that, if true, would allow a factfinder "to infer the employer's knowledge."  *Alsaud*, 12 F. Supp. 3d at 682.  There are no

such facts alleged about Disney.  Plaintiffs do not allege that Disney arranged or participated in meetings with potential victims, made statements indicating awareness of misconduct, or did anything else that could support an inference that Disney was aware of Weinstein's alleged misconduct.  The absence of such facts is fatal to Plaintiffs' claim.  *Bouchard*, 719 F. Supp. 2d at 261-62; *Alsaud*, 12 F. Supp. 3d at 680 ("The absence in the FAC of factual allegations concerning Ouanes' propensity for sexual assault and [Defendant's] knowledge is fatal to Plaintiff's negligence claim and warrants dismissal.").

C.  **Plaintiffs Do Not and Cannot Allege that Any of the Conduct at Issue Took Place on or with Disney's Property.**

The third element of negligent supervision and retention requires that Plaintiffs have been injured by a tort "committed on the employer's premises or with the employer's chattels."  *Ehrens*, 385 F.3d at 236.  New York law imposes this requirement to recognize the limit on an employer's duty "to control the conduct of its employee . . . outside the scope of employment."  *D'Amico v. Christie*, 518 N.E.2d 896, 901 (N.Y. 1987); *see also Alsaud*, 12 F. Supp. 3d at 684 ("[T]he vast weight of authority establishes a premises element to negligent supervision and retention claims.").

Plaintiffs do not plead that any of Weinstein's alleged misconduct took place on Disney's premises or with Disney's chattels.  Instead, for the conduct alleged between 1993 and 2005, Plaintiffs assert that misconduct took place at a Plaintiff's apartment, (FAC ¶ 50), and in Weinstein's hotel rooms, (FAC ¶¶ 56, 73).  Thus, it is clear from the face of the complaint that "the incidents of sexual assault . . . did not occur on [Disney's] property" and therefore Plaintiffs "cannot satisfy the third element of a negligent supervision cause of action" against Disney. *Ehrens*, 385 F.3d at 235-36 (affirming grant of motion to dismiss); *see also Alsaud*, 12 F. Supp. 3d at 681 ("Plaintiff's negligent supervision and retention claims also fail because the underlying

tort did not occur anywhere near [defendant's] premises or with its chattels as alleged by Plaintiff.  Instead, as alleged, . . . the sexual assault occurred at the Plaza Hotel.").

Again, arguments made against the other defendants cannot apply to Disney.  In *Geiss*, the plaintiffs argued that they could satisfy this element for certain defendants that allegedly controlled hotel rooms and resources that Weinstein used for his alleged conduct.  (*See Geiss* Pls.' Opp'n to Mot. to Dismiss at 44-45.)  Here, Plaintiffs do not allege that Disney had anything to do with Weinstein's hotel rooms.  As in *Geiss*, Plaintiffs may argue that Weinstein was staying in hotel rooms in connection with Miramax, but Miramax is not Disney.  (*See* FAC ¶¶ 56, 73.)  Moreover, as courts in this district have made clear, a hotel room cannot satisfy the property or chattels element of negligent supervision and retention if the employer did not exercise substantial "dominion or control" over it, which Plaintiffs do not even attempt to plead against Disney.  *Alsaud*, 12 F. Supp. 3d at 684; *see also P.F. v. Delta Air Lines, Inc.*, No. 99-cv-4127, 2000 WL 1034623, at *13 (E.D.N.Y. June 20, 2000) ("Although plaintiff and defendant were staying in hotel rooms paid for by Delta, the airline neither had control over activities in those rooms, nor did it have access to the rooms.  The hotel accommodations cannot be considered the airline's 'premises' or 'equipment' as support for a claim of negligence against Delta for the assault.").

## CONCLUSION

For the foregoing reasons, Disney respectfully requests that Plaintiffs' single claim against Disney in the First Amended Complaint, for negligent supervision and retention (Count III), be dismissed.

12

July 27, 2018

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP,

by

/s/ Evan R. Chesler

Evan R. Chesler
J. Wesley Earnhardt
Members of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
(212) 474-1000
echesler@cravath.com
wearnhardt@cravath.com

*Attorneys for Defendants The Walt Disney*
*Company and Disney Enterprises, Inc.*

# APPENDIX

### Excerpts of the Only Allegations Against Disney in
### the First Amended Complaint (ECF 11) (emphases added)

5.      Weinstein's widespread sexual misconduct did not occur without the help of others. Rather, over time, Weinstein enlisted the aid of the Complicit Producers, along with other firms and individuals, to facilitate and conceal his pattern of unwanted sexual conduct.  This coalition of firms and individuals became part of the growing "Weinstein Sexual Enterprise," a RICO enterprise.  The Weinstein Sexual Enterprise had many participants, grew over time as the obfuscation of Weinstein's conduct became more difficult to conceal, and included (i) TWC, TWC's Board of Directors . . . , Weinstein, and Miramax, all of whom are responsible for Weinstein's sexual offenses because Weinstein acted within the scope of his employment and/or these persons and entities ratified or concealed Weinstein's conduct or participated in the decades-long campaign to squelch complaints or to illegally procure the silence of victims, witnesses and others (collectively, the "Weinstein Participants" or "RICO Defendants");[2] . . . .

> [2] **Disney and Disney Enterprises** are named as employers of Weinstein for purposes of liability for negligent retention and supervision only at this juncture.

14.      Miramax Film NY, LLC is a New York corporation with its principal place of business in Santa Monica, California.  In 2010, Miramax Film NY, LLC merged with and assumed all liabilities of Miramax Film Corp., which was the Miramax entity that employed Harvey Weinstein or for which Harvey Weinstein acted as an officer or director.  Miramax Film Corp. was a subsidiary of **The Walt Disney Company**.

16.      The **Walt Disney Company ("Disney")** is a Delaware corporation with its principal place of business located in Burbank, California.  In two of Harvey Weinstein's employment agreements with Miramax Film Corp., effective in or about 1993-1995 and 1995-1999, **Disney** is defined as a "co-obligor" of Miramax Film Corp.

17.      **Disney Enterprises, Inc. ("Disney Enterprises")** is a Delaware corporation with its principal place of business in Burbank, California.  In a 1999 employment agreement between Harvey Weinstein and Miramax, "'**Disney Enterprises Inc.** (formerly known as The Walt Disney Company, a Delaware corporation' is defined as a 'co-obligor' of Miramax Film Corp."

32.      Miramax continued to grow its library of films and directors.  In 1993, after the success of The Crying Game, **Disney** offered to purchase Miramax from the Weinsteins for $80 million. The Weinstein brothers agreed to the deal, which promised to cement their Hollywood clout and ensure that they would remain at the head of their company.  The next year, Miramax released its first blockbuster, Quentin Tarantino's Pulp Fiction, and distributed the popular independent film Clerks.

164.    Miramax and TWC's executives, officers, and employees had actual knowledge of Weinstein's repeated acts of sexual misconduct with women.  In particular, Defendants were aware of Weinstein's pattern of using his power to coerce and force young women to engage in sexual acts with him.  This knowledge was possessed by Miramax, TWC, and TWC's Board of Directors.  And **Disney and Disney Enterprises** knew or should have known of Weinstein's conduct.

260.    In two of Harvey Weinstein's employment agreements with Miramax Film Corp., effective in or about 1993-1995 and 1995-1999, **Disney** is defined as a "co-obligor" of Miramax Film Corp.  In a 1999 employment agreement between Harvey Weinstein and Miramax, **Disney Enterprises** is defined as a "co-obligor" of Miramax Film Corp.

262.    Miramax, **Disney, Disney Enterprises**, and Robert Weinstein knew or should have known not only that Weinstein was unfit or incompetent to work directly with women and posed a particular risk of sexually harassing and assaulting them, but also that this unfitness created a particular risk to Plaintiff and the Class.

264.    Miramax, **Disney, Disney Enterprises**, and Robert Weinstein's negligence in supervising and or retaining Weinstein was a substantial factor in causing harm to Plaintiff and the Class.